IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BERNARD ISRAEL )
 )
      Plaintiff, )
 )
    v. )   Civil Action No. 12-1247
 )
INSIGHT PIPE CONTRACTING, LP, )
d/b/a INSIGHT PIPE CONTRACTING, )   Chief Magistrate Judge Lisa Pupo Lenihan
INC. )   ECF No. 11
 )
      Defendant. )

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO STRIKE**

**I. CONCLUSION**

Presently pending is Defendant's Motion to Dismiss or in the Alternative to Strike, ECF No. 11. For the reasons set forth fully below, said Motion will be denied.

**II. CASE SUMMATION**

Plaintiff Bernard Israel ("Plaintiff") is a Black individual of Haitian nationality who was briefly employed as a part-time laborer by Insight Pipe Contracting ("Defendant"). More

specifically, Plaintiff alleges that he was hired in mid-May, 2011 and was trained at the same time as two White employees (Misters Bunday and Stevenson) – neither of whom were better qualified, but both of whom were then hired as full-time laborers, while Plaintiff was retained only on part-time status.   To his knowledge, he was the sole Black employee at his Harmony, Pennsylvania employment location.   He further alleges that within the first few weeks of employment he began to be subjected to a racially hostile work environment.   On or about June 5th, he traveled to a job site in Lima, Ohio where he and two White employees talked about things they "did not like about their jobs", including having to go out of town.   Id. at 4.   On the way home from Ohio, Plaintiff was told he would be going out of town again the following Monday (on or about June 13th), and arrived at work ready to do so, but was instead assigned to work with a White foreman, Ethan Berwick ("Foreman Berwick") who that day in "frustration" referred to him as a "God-damn Negro". Amended Complaint at 2, 4.   Plaintiff reported the racist slur to Defendant's Vice President and Operations Manager, Curtis Montgomery ("Manager Montgomery") on or about June 17th (Friday) and was told it would be investigated.   Id. at 2-3.   On the following Tuesday, June 21st (*i.e.*, on the second business day following Plaintiff's report of the racial epithet), Israel was terminated.   Id. at 3.[1]   Neither of the White employees hired at the same time, whose performance was allegedly "of the same general quality", were terminated.   Id.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and was provided a copy of Defendant's Position Statement dated November 5, 2011 asserting that Plaintiff was terminated for complaining about and/or stating he did not want to work out of town, did not want to pull sewage-coated cable (a part of his job), and

---

[1] Although Foreman Berwick denied the racial slur, after confirmation by a disinterested witness, he was suspended for five (5) days.   Amended Complaint at 6.

was (according to Foreman Berwick and another employee) actively looking for other work. Amended Complaint at 3-5. Plaintiff alleges that (1) the White employees he worked with in Ohio who complained about aspects of their job – including one who complained about travel – were neither disciplined nor terminated, and that he never "said he would not work out of town" (he does not dispute saying he didn't like it); (2) he questioned the necessity of hand-pulling sewage-laden cables/ropes but "was always willing to do" it; and (3) he had some interest in continuing his previous part-time convenience store work during nights and weekends as a necessary supplement to his part-time employment with Defendant but was "not actively seeking [replacement or preclusive] work elsewhere" . Id. at 4-5. He also alleges that one of the two White employees hired and trained at the same time as Plaintiff (but made full-time) had stated he was looking for alternative employment (specifically a Union job) but was not terminated. Id. at 6. And he asserts that, according to Defendant's Position Statement, his termination was premised in part on the reporting/participation of Foreman Berwick, who had been disciplined for independently-verified expression of racial animus toward Plaintiff. Id. at 11. A Notice of Right to Sue was issued on May 30, 2012. His Complaint was timely filed in this Court within 90 days thereafter.

Plaintiff's Amended Complaint raises claims of race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as well as corresponding claims of violation of the Pennsylvania Human Relations Act ("PHRA").[2] He specifically asserts that he was treated differently from, and subjected to

---

[2] As the parties observe, Pennsylvania Courts interpret the PHRA consistently with Title VII. See Defendant's Brief in Support at 8. See also, *e.g.*, Huston v. Proctor & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n. 2 (3d Cir. 2009) ("The proper analysis under Title VII and the [PHRA]

harsher standards than, White employees as detailed above; and that he was subjected to a racially hostile environment, discrimination, and retaliation for making a valid internal complaint of the same.  See generally Amended Complaint; see also Plaintiff's Brief in Opposition at 1.  This Court has jurisdiction under 29 U.S.C. Section 1331.

Presently pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative to Strike which principally asserts that (1) Defendant is entitled to dismissal as a matter of law because Plaintiff has failed to allege a *prima facie* case under Title VII or to meet applicable pleading standards, and (2) information pertaining to the EEOC action included with Plaintiff's Complaint should be stricken.  As discussed below, Defendant's assertions are unpersuasive.

### III.  STANDARD OF REVIEW

#### A.  General Standard for Motion to Dismiss

A Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6) is an appropriate means of challenging the legal sufficiency of the Complaint.  See, *e.g.*, Sturm v. Clark, 835 F.2d 1009, 111 (3d Cir. 1987).  It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). See also Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57).  In Iqbal, the Supreme Court further explained that "[t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

---

is identical, as Pennsylvania Courts have construed the protections of the two acts interchangeably.").

Shortly therafter, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard as requiring that civil complaints set out "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210 (quoting Iqbal). And it set forth the following two-prong test:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. . . . This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

Fowler, 578 F.3d at 210-11 (citations omitted).

### B. Consideration of Evidence Within Motion to Dismiss Context

In assessing a Motion to Dismiss under Rule 12(b)(6), the Court may consider not only the factual allegations that appear on the face of the Complaint, but also documents attached to or submitted with the Complaint, or incorporated into the Complaint by reference, as well as certain other evidence outside the Complaint/other authentic items of record. See generally, Pryor v. Nat'l Collegiate Athletic Ass'n., 228 F.3d 548, 560 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994).[3] More specifically, "[i]n resolving a

---

[3] Factual allegations within documents described, identified or incorporated in the Complaint may be considered if they are central or integral. See, *e.g.*, In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as 'documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" State College Area School Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 577 -578 (M.D. Pa. 2011) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).[4]  Consideration of such documents need not convert the motion to dismiss into a motion for summary judgment.

This District Court and others have held that an EEOC charge of discrimination and the related documents are public records which may thus be considered. See, e.g., Branum v. United Parcel Serv., Inc., 232 F.R.D. 505, 506 n. 1 (W.D. Pa. 2005); Burkhart v. Knepper, 310 F.Supp.2d 734, 741–42 (W.D.Pa.2004).  See also Hercik v. Rodale, Inc., 2004 WL 1175734, * 1 (E.D. Pa. May 24, 2004); Tlush v. Mfrs. Res. Ctr., 415 F.Supp.2d 650, 654 (E.D. Pa. 2002) ("[I]n resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records . . . . Under this standard, administrative filings, such as the record of the case before the EEOC, may be considered by the court without converting the motion to dismiss into a motion for summary judgment.").

---

[4] See also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); Chester Co. Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990); PBGC v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. ANALYSIS AS TO DEFENDANT'S MOTION TO DISMISS

### A. Discrimination in Violation of Title VII

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1).

Plaintiff is correct in his response to Defendant's assertion that entitlement to dismissal in this action may be premised on assessment of "the plaintiff's statement of facts sufficient to establish a *prima facie* case". Plaintiff's Brief in Opposition at 2. As our sister Court in the Eastern District of Pennsylvania has recently reiterated:

> In Title VII cases, both the Supreme Court and the Third Circuit have held that a plaintiff does not need make out a full "prima facie" case of discrimination in a complaint, in order to state a plausible claim to relief. In Swierkiewicz v. Sorema N.A., the Supreme Court concluded:
>
> 'The prima facie case under McDonnell Douglas [ ] is an evidentiary standard, not a pleading requirement.... This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.... [F]ederal Rule of Civil Procedure 8(a)(2) [ ] provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'
>
> 534 U.S. 506, 511–12 (2002) (citations omitted). Although this decision pre-dated Twombly and Iqbal, the Third Circuit has continued to follow its guidance in Title VII cases decided thereafter. Accordingly, a 'plausible' Title VII claim can be alleged without presenting a full prima facie case of discrimination. See Fowler, 578 F.3d at 213 ('Even post-Twombly, it has been noted that a plaintiff is not

7

required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.' ); see also Williams v. Temple Univ. Hosp., 400 Fed. App'x 650, 652–53 (3d Cir. 2010).

Pietek v. Don Rosen Imports, 2013 WL 968294, *2 (E.D. Pa., March 13, 2013). See also, *e.g.*, Watson v. Department of Services for Children, Youths and Their Families Delaware, 2013 WL 1222853, *4 (D. Del. Mar. 26, 2013) (concluding that "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination under McDonnell Douglas") (citing Swierkiewicz); Carswell v. UPMC/UPMC Braddock Hosp., 2013 WL 1182397, *3 (W.D. Pa., Jan. 28, 2013); Santiago v. Brooks Range Contract Services, Inc., 2012 WL 1018060 (E.D. Pa. Mar. 26, 2012); Miller v. Keystone Blind Assoc./TPM, 2011 WL 63388699, *3 (W.D. Pa. Dec. 19, 2011); Jacques–Scott v. Sears Holding Corp., 2011 WL 1059704, *8 (D. Del. 2011). Compare Defendant's Brief in Support at 7 (providing citations to the Seventh Circuit).[5]

---

[5] And although Defendant appears to modify its argument in its Reply Brief in Support, its analysis remains erroneous for the reasons set forth herein. See Reply Brief in Support at 1 (explaining that Defendant "used the phrase '*prima facie* claim' according to the . . . ordinary, dictionary definition" and intended it to mean "sufficient at first impression" under the mandates of Twombly and Iqbal"). The Amended Complaint meets this standard.

Defendant's asserts in its Reply Brief in Support (p. 2) that Swierkiewicz is "no longer good law" and "no longer applies" given the Third Circuit's decision in Fowler. Compare Pietek, *supra*. The Court also observes that Defendant omits mention of the Third Circuit's later decision, In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300 (3d Cir. 2010). In this decision, the Circuit noted that:

> Twombly affirms that Rule 8(a)(2) requires a statement of facts "suggestive enough" (when assumed to be true) "to render [the plaintiff's claim to relief] plausible," that is, "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct. Twombly, 550 U.S. at 556, 127 S.Ct. 1955. Iqbal, which reiterated and applied Twombly's pleading standard, endorses this understanding. See Iqbal, 129 S.Ct. at 1949–51. Although Fowler v. UPMC

8

Defendant's selective omission, from its Motion to Dismiss and Brief in Support, of many of Plaintiff's factual allegations[6] does not change the substance of the Amended Complaint which, as more accurately set forth above, suffices to state a plausible claim of discrimination in violation of Title VII under the applicable standard. Nor does Defendant's attempt to artificially cabin Plaintiff's allegations to an analysis of pretext under McDonnell Douglas affect their relevance to a plausible statement of circumstances giving rise to an inference of discrimination.[7]

---

> Shadyside, 578 F.3d 203 (3d Cir. 2009), stated that Twombly and Iqbal had "repudiated" the Supreme Court's earlier decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), see Fowler, 578 F.3d at 211, we are not so sure. Clearly, Twombly and Iqbal inform our understanding of Swierkiewicz, but the Supreme Court cited Swierkiewicz approvingly in Twombly, see 550 U.S. at 555–56, 127 S.Ct. 1955, and expressly denied the plaintiffs' charge that Swierkiewicz "runs counter" to Twombly's plausibility standard, id. at 569–70, 127 S.Ct. 1955. As the Second Circuit has observed, Twombly "emphasized that its holding was consistent with [the Court's] ruling in Swierkiewicz that 'a heightened pleading requirement,' requiring the pleading of 'specific facts beyond those necessary to state [a] claim and the grounds showing entitlement to relief,' was 'impermissibl[e].' " Arista Records, 604 F.3d at 120 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955 (alterations in Arista Records).) In any event, Fowler's reference to Swierkiewicz appears to be dicta, as Fowler found the complaint before it to be adequate. 578 F.3d at 212; see also id. at 211 ("The demise of Swierkiewicz, however, is not of significance here.").

619 F.3d at 317, n. 17. In any event, here too, Plaintiff's Amended Complaint provides more than the short plain statement required under Swierkiewicz; as discussed, it meets the plausibility standard.

[6] Cf. Defendant's Brief in Support at 5 ("Israel's sole pertinent factual averments toward the establishment of a *prima facie* claim are that one co-worker made an isolated race-based comment toward him, and then over a week later, his part-time employment stint was terminated by the company's management.").

[7] A disparate treatment discrimination analysis looks to whether plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and whether (4) members outside the protected class were treated more favorably. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999); see also Harris v. Washington County Children & Youth Services, 2007 WL 2463398, *9 (W.D. Pa. Aug. 28, 2007). See factual

### B. Retaliation in Violation of Title VII

To establish a claim for retaliation under Title VII, a plaintiff must allege that (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. See Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995); Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006).

Again, as set forth above, Plaintiff alleges facts sufficient to state a plausible claim. As to Defendant's assertion that the temporal proximity is – without more - insufficient and it is entitled to dismissal, the Court notes that the law in this Circuit is fairly well established that temporal proximity between the protected activity and the adverse employment action ordinarily will not be sufficient (at the summary judgment stage), to meet Plaintiff's burden of demonstrating a causal connection between the two events, *unless the interim period is so short as to be unusually suggestive of retaliatory motive*. See, *e.g.*, Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1981) (temporal proximity alone was enough to establish causation where adverse employment action

---

summation of Plaintiff's allegations, *supra*.

The Court observes, however, that a racially hostile work environment analysis looks to the following five elements: (1) plaintiff intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him (subjective test); (4) the discrimination would detrimentally affect a reasonable person of the same race in his position (objective test); and (5) the existence of respondeat superior liability. See Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 276-77 (3d Cir. 2001) (citations omitted); Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). Thus, to withstand summary judgment on a hostile work environment claim, the plaintiff must present "sufficient evidence to give rise to an inference of discrimination by offering proof that his 'workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' . . . and the conduct is based [upon plaintiff's race]." Abramson, 260 F.3d at 278-79 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

occurred two days after the protected activity, and there were no allegations of wrongdoing by the employee during that time); Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003) (holding ten day time period between protected activity and adverse employment action, along with evidence that supervisors made comments regarding plaintiff's EEOC complaint in close proximity to her discharge, was sufficient to survive summary judgment); Harris v. Washington County Children & Youth Services, 2007 WL 2463398, *13 (W.D. Pa. Aug. 28, 2007). See also discussion of interval alleged (*i.e.*, termination on the second business day following Plaintiff's reporting/complaint to management of Foreman Berwick's racial epithet), *supra*;[8] Plaintiff's Brief in Opposition at 6 (noting that Plaintiff has also alleged facts suggestive of continuing animus/discrimination, *e.g.*, reliance on Berwick's report in termination decision).

### C. EEOC Proceedings

As discussed above, administrative filings, such as the record of the case before the EEOC, may be considered by the Court in ruling on a motion to dismiss. See *supra*, citing cases. See also Watson, 2013 WL 1222853, *5 (noting that EEOC document containing facts integral to Title VII violations alleged was properly considered on motion to dismiss). Defendant's assertion that Plaintiff's incorporation of facts presented to the EEOC should be stricken as immaterial or "impertinent" at this stage because Plaintiff "must first establish a *prima facie* case of discrimination", Defendant's Brief in Support at 9, is unpersuasive for reasons addressed *supra*.

---

[8] Compare Defendant's Reply Brief in Support at 2 (asserting that "Plaintiff merely alleges . . . that Plaintiff's supervisor promised to investigate the [isolated racial slur]; and that over a week later Plaintiff was terminated"); id. at 3 ("Plaintiff relies solely on the eight days of time between reporting the racial slur and his discharge . . . .").

## V. SUMMATION

As set forth above, this Court has concluded that in light of the facts alleged Defendant is not entitled, under the applicable standard, to dismissal as a matter of law. Nor is it entitled to have Plaintiff's references, in his Amended Complaint, to the related EEOC filings stricken. At this point in the litigation, the Court concludes that the Complaint raises a sufficient "plausibility" of actionable conduct by Defendant and corresponding entitlement to relief, and sets forth sufficient factual allegations under the applicable standard, as to the potential claims. The Court reiterates that in deciding a motion to dismiss it must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. 583 (quoting Scheuer v. Rhoads, 416 U.S. 232, 236 (1974)). Accordingly, it will order that Defendant's Motion to Dismiss or in the Alternative to Strike, ECF No. 11, be denied.

                Lisa Pupo Lenihan
                United States Chief Magistrate Judge

Date:   May 28, 2013